IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | Case Number: 3:22-CR-00359-E |
| | § | |
| ERIC VON THENSTEAD, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Thenstead's motion to dismiss (Motion), (ECF No. 25), which seeks to dismiss the sole count of his indictment, (ECF No. 1), for possession of a firearm by a convicted felon. *See* 18 U.S.C. § 922(g)(1). The Court rejects Thenstead's challenges and consequently denies Thenstead's Motion.

### I.   BACKGROUND

The indictment provides:

> On or about July 9, 2022, in the Dallas Division of the Northern District of Texas, the defendant, **Eric Von Thenstead**, knowing that he had been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, that is, a felony offense, did knowingly possess, in and affecting interstate and foreign commerce, a firearm, to wit: a Ruger, Model LCP, .380 caliber pistol, bearing serial number 371269239.
>
> Moreover, prior to the defendant's possession of the above-referenced firearm on or about July 9, 2022, he was convicted of at least three violent felony offenses or serious drug offenses committed on occasions different from one another.
>
> In violation of 18 U.S.C. §§ 922(g)(l) and 924(a)(8), the punishment for which is found at 18 U.S.C. § 924(e)(l).

(ECF No. 1 at 1) (emphasis in original). In his Motion, Thenstead asserts "this charge violates his Second Amendment right to possess firearms in his home for self-defense and the federal felon in possession statute prohibiting his access to possess firearms or ammunition is unconstitutional."

(ECF No. 25 at 1). The Government has responded in opposition. (ECF No. 26). Having been fully briefed, the Motion is ripe for adjudication.

## II.   LEGAL STANDARD

Federal Rule of Criminal Procedure 12 allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). One available challenge is "a defect in the indictment," including "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "A court may grant a motion to dismiss an indictment if the defect is one essentially a question of law," and "[m]otions to dismiss that question the constitutionality of a statute are such questions of law that are proper for the court to review." *United States v. Perry*, 2023 WL 3021074, at *2 (N.D. Tex. 2023) (citing *United States v. Flores*, 404 F.3d 32, 324 (5th Cir. 2005); *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011)).

## III.   ANALYSIS

Though the Fifth Circuit has previously held that § 922(g)(1) is not unconstitutional,[1] Thenstead argues that the Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, ⸺ U.S. ⸺, 142 S. Ct. 2111, 213 L.Ed.2d 387 (2022) changes that result. Specifically, Thenstead contends (i) that Thenstead is "the people" covered by the plain text of the Second Amendment and (ii) that the government cannot meet its burden of showing § 922(g)(1) is consistent with the Nation's history and tradition of firearm regulation, as required under *Bruen*. (ECF No. 25 at 3-6). In response, the government raises three arguments: (i) Thenstead's Second Amendment argument is foreclosed by precedent; (ii) "felons" are not among "the people" protected by the Second Amendment; and (iii) the felon-in-possession ban is

---

[1] *See generally United States v. EtchisonBrown*, No. 22-10892, 2023 WL 7381451, at *3 (5th Cir. Nov. 7, 2023) ("[W]e have consistently upheld the constitutionality of § 922(g)(1) under the Commerce Clause"); *United States v. Jones*, No. 23-10198, 2023 WL 8074295, at *2 (5th Cir. Nov. 21, 2023) (rejecting assertion that § 922(g)(1) is unconstitutional under plain-error review).

consistent with the history and tradition of the United States. (ECF No. 26 at 2-20). The Court begins by laying out the present landscape of Second Amendment jurisprudence under *Bruen*. The Court then turns to § 922(g)(1) and considers the statute's constitutionality.

### A. Section 922(g)(1), *Bruen*, and Second Amendment Jurisprudence

Section 922(g)(1) provides, in pertinent part:

> (g) It shall be unlawful for any person—(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). The Second Amendment provides, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

Prior to *Bruen*, in *District of Columbia v. Heller* and *McDonald v. Chicago*, the Supreme Court held that "the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense." *See Bruen*, 142 S. Ct. at 2125 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010)). In *Heller*, the Supreme Court explained: "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" *Heller*, 554 U.S. at 626.

After *Heller* and *McDonald*, the lower courts largely "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combine[d] history with means-end scrutiny." *Bruen*, 142 S. Ct. at 2125-26. The Supreme Court in *Bruen*, however, rejected that approach and clarified the framework for applying the Second Amendment. *Bruen*, 142 S. Ct. at 2126. In *Bruen*, the Supreme Court promulgated the following "standard for applying the Second Amendment:"

> When the Second Amendment's plain text covers an individual's conduct, *the Constitution presumptively protects that conduct*. The government must then justify its regulation by *demonstrating that it is consistent with the Nation's historical*

> *tradition of firearm regulation*. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Konigsberg*, 366 U.S. at 50, n. 10, 81 S.Ct. 997.

*Bruen*, 142 S. Ct. at 2129–30 (emphasis added).

The test, rooted in constitutional text and history, aims to understand the original meaning of the amendment, "fixed according to the understandings of those who ratified it," while also applying that understanding to address modern-day circumstances. *Bruen*, 142 S. Ct. at 2132. Accordingly, the Supreme Court directs courts to engage in analogical reasoning in determining the permissibility of modern statutes and regulations. *See Bruen*, 142 S. Ct. at 2132. ("Fortunately, the Founders created a Constitution—and a Second Amendment—'intended to endure for ages to come, and consequently, to be adapted to the various crises of human affairs.'") (quoting *McCulloch v. Maryland*, 4 Wheat. 316, 415, 4 L.Ed. 579 (1819)).

As promulgated, such analogical reasoning requires courts to ask if the regulations are "relevantly similar," which, the Supreme Court suggests, "point[s] toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S. Ct. at 2132–33. When engaging in these comparisons, a challenged regulation need not be "a dead ringer for historical precursors . . . to pass constitutional muster." *Bruen*, 142 S. Ct. at 2133. Only a "historical analogue" is required, not a "historical twin." *Bruen*, 142 S. Ct. at 2133 (emphasis omitted).

### B. Prior Fifth Circuit Precedent

The government first argues Thenstead's argument is foreclosed by Fifth Circuit precedent. Indeed, the Fifth Circuit held, pre-*Bruen*, that 18 U.S.C. § 922(g)(1) does not violate the Second Amendment. *See, e.g.*, *United States v. Massey*, 849 F.3d 262, 265 (5th Cir. 2017). Moreover, the Fifth Circuit's reasoning in prior cases relied largely upon the text and history of the Second Amendment. For example, the Fifth Circuit in *United States v. Darrington* held that the individual right recognized by the Second Amendment "does not preclude the government from prohibiting

the possession of firearms by felons." 351 F.3d 632, 633 (5th Cir. 2003). It went on to note that a prior Fifth Circuit case, *United States v. Emerson*, "discusses authority that legislative prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear arms protected by the Second Amendment." *United States v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003) (citing *United States v. Emerson*, 270 F.3d 203, 261, 226 n.21 (5th Cir. 2001)).

However, in *Rahimi v. United States*, the Fifth Circuit considered a post-*Bruen* challenge to a similar provision, 18 U.S.C. § 922(g)(8), which prohibited persons subject to a domestic violence restraining order from possessing firearms. 61 F.4th 443 (5th Cir. 2023). There, too, the Fifth Circuit had prior precedents upholding § 922(g)(8). *See Rahimi*, 61 F.4th at 450. But the Fifth Circuit held that "*Bruen* clearly 'fundamentally change[d]' our analysis of laws that implicate the Second Amendment . . . rendering our prior precedent obsolete." *Rahimi*, 61 F.4th at 450 (internal citation omitted) (citing *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021)). Under that directive, the Fifth Circuit left little room for precedent relating to 18 U.S.C. § 922(g)(1) to nonetheless survive. *See also United States v. Barber*, 2023 WL 1073667, at *4 (E.D. Tex. Jan. 27, 2023) (applying *Bruen* as opposed to the Fifth Circuit's pre-*Bruen* precedent to a motion challenging § 922(g)(1) and noting the "district courts' obligation to apply intervening Supreme Court precedent that conflicts with circuit authority").

Similarly, though the Fifth Circuit previously drew conclusions regarding the "historically understood right to bear arms," both *Bruen* and *Rahimi* provide examples of the historical analysis required for a statute to pass constitutional muster. The Fifth Circuit's prior precedents do not meet this different standard; for example, in *Emerson*, the Fifth Circuit cited no primary sources. *See generally Emerson*, 270 F.3d 203. Furthermore, the secondary sources the Fifth Circuit cited therein lack direct or persuasive primary sources regarding the disarming of felons. *See, e.g.*,

*United States v. Zelaya Hernandez*, 2023 WL 4161203, at *3–4 (N.D. Tex. 2023) (collecting citations). The Court now considers Thenstead's challenge under the framework set out in *Bruen*.

### C. "The People" that the Second Amendment Protects

Under *Bruen*, the Court first asks whether the "Second Amendment's plain text covers an individual's conduct." *Bruen*, 142 S. Ct. at 2126. For 18 U.S.C. § 922(g)(1), the key question at this step is whether the Second Amendment's reference to "the people" includes felons. *Compare, e.g.*, *United States v. Hill*, 2022 WL 17069855, at *4–5 (S.D. Tex. Nov. 17, 2022) ("[F]elon-in-possession statutes fail at the first step of the *Bruen* test—i.e., felons do not fall within the 'plain text' of the Second Amendment."), *with United States v. Coombes*, 629 F.Supp.3d 1149, —— (N.D. Okla. 2022) ("[I]t is clear that convicted felons fall within "the people" as contemplated by the First and Fourth Amendments. Based on existing precedent and well-established canons of construction, the court declines to carve out felons from the scope of the Second Amendment's protection of "the people."). The Court ultimately concludes that although *Rahimi* provides a potential basis for excluding "felons" from "the people," case law and practical anomalies advise against such a conclusion.

However, *Rahimi* left unresolved whether *Heller* and *Bruen* should be interpreted to mean that individuals convicted of felonies are excluded from the Second Amendment's coverage altogether, or that their disarmament is constitutionally permissible so long as the Government demonstrates historical support for the specific regulation. *See Zelaya Hernandez*, 2023 WL 4161203, at *3–4 ("*Rahimi* seems to at least leave open the possibility that felons are outside of 'the people' protected by the Second Amendment. . . . But *Rahimi* also explicitly endorses an approach to the Second Amendment that primarily focuses on the government's power to take the Second Amendment right away, not the right's initial scope.").

Specifically, in wrestling with *Heller* and *Bruen*'s reference to "law-abiding, responsible citizens," the Fifth Circuit noted the different analytical approaches to the Second Amendment:

> "[O]ne [approach] uses history and tradition to identify the scope of the *452 right, and the other uses that same body of evidence to identify the scope of the legislature's power to take it away." *Kanter*, 919 F.3d at 452 (Barrett, J., dissenting). The Government's argument that Rahimi falls outside the community covered by the Second Amendment rests on the first approach. But it runs headlong into *Heller* and *Bruen*, which we read to espouse the second one.

*Rahimi*, 61 F.4th 443, 451–52.

Indeed, as the Supreme Court has made clear, "the Second Amendment confer[s] an individual right to keep and bear arms." *Heller*, 554 U.S. at 595, 128 S.Ct. 2783. And "the people," as with "all six other provisions of the Constitution that mention 'the people,'" has been read to "refer[ ] to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580; *see also Heller*, 554 U.S. at 581 (noting, in interpreting the interaction between the Second Amendment's operative and prefatory clause, that the term "the people" created a "strong presumption that the Second Amendment right ... belongs to *all Americans*") (emphasis added).

This approach also avoids a somewhat anomalous conception of individual rights. Typically, a deprivation of rights "occurs because of state action, and state action determines the scope of the loss (subject, of course, to any applicable constitutional constraints)." *Kanter*, 919 F.3d at 452–53 (Barrett, J. dissenting). The converse approach would strip the right "as a self-executing consequence of [a person's] new status," regardless of any legislative determination regarding the appropriate deprivation. *See Kanter*, 919 F.3d at 452. More concretely, suppose that Congress had decided to disarm non-violent felons for ten years following conviction. In twenty years, a non-violent felon would be beyond the period Congress designated to disarm him. But if authorities nonetheless tried to disarm him, he would be without constitutional standing to assert a Second Amendment claim because his felon status automatically removed him from the Second Amendment's scope. *See Kanter*, 919 F.3d at 452; *United States v. Goins*, ––– F.Supp.3d –––, –––, 2022 WL 17836677, at *7 (E.D. Ky. Dec. 21, 2022). "That is an unusual way of thinking about rights." *See Kanter*, 919 F.3d at 452 (Barrett, J., dissenting); *accord Rahimi*, 61 F.4th at 453.

Thus, the Court is hesitant based on current case law and other practical anomalies to definitively conclude felons are outside of the scope of the Second Amendment by way of the term "the people." And beyond the threshold question of who constitutes "the people," 18 U.S.C. § 922(g)(1) plainly implicates the Second Amendment, as it flatly prohibits the possession of any firearm. *See Bruen*, 142 S. Ct. at 2134. Accordingly, the Second Amendment's plain text covers the conduct, and the Constitution presumptively protects that conduct unless § 922(g)(1) is "consistent with this Nation's historical tradition of firearm regulation." *See Bruen*, 142 S. Ct. at 2126.

### D. Historical Analogues

The Court thus turns to the historical tradition of firearm regulation. The Court looks to history because the Second Amendment is widely understood as having "codified a *pre-existing* right." *Heller*, 554 U.S. at 592, 128 S.Ct. 2783. Under this stricter approach, the Government has adequately demonstrated that section 922(g)(1) "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. Because Thenstead's motion appears to challenge the statute on its face, the Government may prevail by showing that "[some] set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Government cites that felonies were historically punished by forfeiture of land and personal property, *see* 4 WILLIAM BLACKSTONE, *Commentaries on the Laws of England* 95 (1st ed. 1769), and provides several early examples of both violent and nonviolent felonies. *See, e.g.*, 2 LAWS OF THE STATE OF NEW YORK PASSED AT THE SESSIONS OF THE LEGISLATURE (1785–1788) at 664–65 (1886) (criminalizing burglary, robbery, arson, malicious maiming and wounding, and counterfeiting); 9 WILLIAM WALLER HENING, STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF THE LEGISLATURE 301–02 (1821) (criminalizing forging, counterfeiting, or presenting forged documents for

payment); 2 STATUTES AT LARGE OF PENNSYLVANIA FROM 1682 TO 1801 at 12 (1896) (criminalizing arson and rape); 1 THE LAWS OF MARYLAND[,] WITH THE CHARTER, THE BILL OF RIGHTS, THE CONSTITUTION OF THE STATE, AND ITS ALTERATIONS, THE DECLARATION OF INDEPENDENCE, AND THE CONSTITUTION OF THE UNITED STATES, AND ITS AMENDMENTS 79 (1811) (criminalizing "corruptly embezzling, impairing, razing, or altering any will or record"). The Government also refers the Court to colonial laws disarming "untrustworthy individuals." *See Range v. Att'y Gen.*, 53 F.4th 262, 274 (3d Cir. 2022) ("[T]he pertinent historical periods were replete with laws" that "categorically disqualified people from possessing firearms based on a judgment that certain individuals were untrustworthy parties to the nation's social compact."), *vacated, reversed, and remanded*, 69 F.4th 96 (2023) (en banc).

Despite numerous challenges to section 922(g)(1) in the wake of *Bruen*, the Court is aware of no decisions that conclude Section 922(g)(1) violates the Second Amendment from the Fifth Circuit or in the Northern District of Texas.[2] In light of the Government's sources—and affirmed in that conclusion by the collective wisdom of other courts that have evaluated facial challenges in light of the historical record[3]—the Court also concludes that section 922(g)(1) still "passes constitutional muster." *United States v. Zelaya Hernandez*, No. 3:23-CR-0056-B, 2023 WL

---

[2] *But see generally*, *Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023).

[3] *See, e.g., United States v. Palmer*, 2023 WL 3313051, at *1 (N.D. Tex. 2023) (citing ROBERT J. SPITZER, *Gun Law History in the United States and Second Amendment Rights*, 80 LAW & CONTEMP. PROBS. 55, 60 (2017)) ("Some estimates indicate that there were no fewer than eleven laws among the colonies—predating the ratification of the Constitution—regulating or prohibiting the possession of firearms by convicted felons, other 'criminals,' or non-citizens."); *United States v. Melendrez-Machado*, 2023 WL 4003508, at *8 (W.D. Tex. 2023) ("Loyalty laws fully disarmed certain groups ... just as § 922(g)(1) fully disarms felons," and they were apparently "enacted at least in part because 'disloyal' groups flouted the rule of law, defying sovereign authority and communal values. Section 922(g)(1) is no different ... [felons'] disarmament is most naturally justified by their failure to conform to the law."); *United States v. Barber*, 2023 WL 1073667, at *8 (E.D. Tex. 2023) (quoting *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting)) ("Section 922(g)(1)'s application to dangerous felons ... easily [satisfies] *Bruen* ... because the historical record supports the proposition that Congress 'may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety.' ").

4161203, at *7 (N.D. Tex. June 23, 2023); *United States v. Robinson*, No. 3:21-CR-00159-N, 2023 WL 4304762, at *2 (N.D. Tex. June 29, 2023).

### IV. CONCLUSION

Thenstead's constitutional challenges to the statute under which he has been indicted, 18 U.S.C. § 922(g)(1), lack merit. The Court accordingly denies his motion to dismiss.

**SO ORDERED.**

20th day of December, 2023.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS